IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY,<br>    Plaintiff<br><br>    v.<br><br>HARRY J. DARRAH, JR., t/a DARRAH'S AUTOMOTIVE AND RECYCLING; ESTATE OF HARRY J. DARRAH., JR., Deceased; NEIL ALBERT, ESQ., as Administrator of the Estate of Harry J. Darrah, Jr., Deceased; and JOSEPH STINE,<br>    Defendants | CIVIL NO. 1:11-CV-1539 |

*M E M O R A N D U M*

I.   *Introduction and Procedural History*

This is a diversity action controlled by Pennsylvania law. Plaintiff, Western Heritage Insurance Company, seeks a declaratory judgment that it has no duty to defend or indemnify defendants, the Estate of Harry J. Darrah, Jr.; Neil Albert, Esq., the administrator of the Estate of Harry J. Darrah, Jr.; and Harry J. Darrah, Jr., t/a Darrah's Automotive and Recycling, in a civil suit in the Court of Common Pleas of York County, Pennsylvania. The plaintiff in that state-court action, Joseph Stine, has also been named as a defendant here. He sued to recover for serious personal injuries he suffered, including scarring and disfigurement, while he was working on premises controlled by the "Darrah Defendants."[1]

This is the second time the parties have been before us litigating whether Western Heritage must defend and indemnify the Estate or Harry J. Darrah,

---

[1] The "Darrah Defendants," as Stine defines them in his state-court complaint, are members of the Darrah family and businesses they operated at the premises. The Darrah Defendants include Harry J. Darrah, Jr., deceased, and Harry J. Darrah, Jr. t/a Darrah's Automotive and Recycling. The administrator of the Estate of Harry J. Darrah, Jr. was named as a defendant in that action.

Jr., t/a Darrah's Automotive and Recycling.  In the previous case, we ruled that Stine's allegations in his state-court amended complaint did not fall within the scope of Western Heritage's policy, and we entered a declaratory judgment in its favor. *Western Heritage Ins. Co. v. Harry J. Darrah, Jr., t/a Darrah's Automotive and Recycling*, No. 10-476, 2010 WL 4780955 (M.D. Pa. Nov. 17, 2010).  That case is now on appeal in the Third Circuit.  C.A. No. 10-4663.

After our ruling, Stine filed in the state-court action a second amended complaint on May 11, 2011, altering the allegations that bear on whether Western Heritage has to provide coverage.  The Western Heritage policy provides coverage for an automobile dismantling and recycling operation, but Stine's previous pleading had alleged he was injured while repairing a vehicle in the repair/body shop.  His current pleading alleges that the repair/body shop is used in the dismantling and recycling operation and that he was injured while "working on repairing a vehicle in the repair/body shop in use in auto dismantling and recycling operations . . . ."

Two motions to dismiss have been filed, one by the estate; attorney Albert, the administrator of the estate, and Harry J. Darrah, Jr. t/a Darrah's Automotive and Recycling, and the other by Stine (although Stine simply adopts the arguments made by the other defendants).  Among other things, they argue that the allegations of the second amended complaint bring Stine's claim within the coverage provided by Western Heritage.

II.     *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286,

291 (3d Cir. 2010) (quoted case omitted). A court may consider documents attached to the complaint if they form the basis of the plaintiff's claim. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Thus we may consider the second amended complaint in the underlying state-court action and the Western Heritage policy, attached as exhibits to Plaintiff's complaint.

III.     *Background*

    A.     *The Pertinent Policy Language*

The Western Heritage policy is a commercial general liability insurance policy providing coverage for bodily injury or property damage "that the insured becomes legally obligated to pay as damages." (Doc. 1-4, Compl., Ex. C, the Western Heritage policy, ECF p. 14).[2] The Declarations page lists as the "Named Insured" "Harry J. Darrah, Jr t/a Darrah's Automotive and Recy[c]ling" with an address at 535 Prospect Street, York, Pennsylvania. (*Id.*, ECF p. 3). The policy period ran from May 9, 2004, to May 9, 2005. (*Id.*).

Item 4 on the Declarations page includes a description of the business as "Auto Sales/Salvage & Repair Garage." However, an endorsement, effective August 8, 2004, amended that description to "Auto Dismantling and Recycling Operations."[3] The endorsement is entitled "Limitation of Coverage to Designated Premises or Project." Underneath this title, the endorsement reads: "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part." Below this language is the title "Schedule" and two boxes,

---

    [2] We refer to the page numbers assigned by the Electronic Case Files (ECF) system.

    [3] A previous endorsement on the same date limited coverage to auto dismantling only.

3

one for listing "Premises" and the other for listing a "Project." The "Premises" box is empty. The "Project" box reads: "Auto Dismantling and Recycling Operation." Underneath the boxes, the endorsement reads: "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The endorsement then provides:

> This insurance applies only to "bodily injury", "property damage" . . . and medical expenses arising out of:
>
> 1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
>
> 2.  The project shown in the Schedule.

(*Id.*, ECF p. 9).

    B.   *The State-Court Action*

In his state-court action, Stine alleges the following in his second amended complaint. Harry J. Darrah, Jr, along with family members, traded and did business as several business entities, the "Darrah Defendants." (Doc. 1-2, Ex. A, state-court second amended complaint ¶¶ 21-30). These business entities owned, controlled, maintained, co-owned, and/or possessed the premises located at 535-547 E. Prospect Street, York, Pennsylvania. (*Id*. ¶ 33). "[T]he Darrah Defendants operated and maintained the premises as a business performing automobile sales, repairs, salvages, and recycling, among other things." (*Id.* ¶ 34). Stine was an employee of Darrah's Automotive and Recycling, Inc. "and was on the Darrah Defendants' premises for purposes of his employment, and was a business visitor/business invitee on the premises." (*Id.* ¶ 35, ECF p. 9).[4]

---

[4] Darrah's Automotive and Recycling, Inc. is not listed as one of the "Darrah Defendants." As noted, the named insured on the policy is "Harry J. Darrah, Jr. t/a Darrah's Automotive and Recycling," without the corporate designation.

4

The complaint further alleges:

46. At all times relevant hereto, the Darrah Defendants knew that the repair/body shop on the premises was an area where mechanics employed by Darrah's Automotive and Recycling, Inc. routinely worked.

47. The repair/body shop on the premises was used in auto dismantling and recycling operations in that autos were dismantled in the repair/body shop and parts removed from autos in the repair/body shop were recycled, and recycled parts were used in the repair/body shop.

. . . .

64. On November 26, 2004, the Darrah Defendants provided Plaintiff with a droplight that was not safe for use in an automobile repair/body shop in use in auto dismantling and recycling operations.

. . . .

70  On November 26, 2004, Plaintiff . . . was working as a mechanic in the repair/body shop in use in auto dismantling and recycling operations on the Darrah Defendants' premises.

71. At all times relevant hereto, Plaintiff was required by virtue of his employment to be working in the repair/body shop in use in auto dismantling and recycling operations and using the equipment supplied by Defendants, including the subject Droplight.

72. On November 26, 2004, Plaintiff . . . was working on repairing a vehicle in the repair/body shop in use in auto dismantling and recycling operations at the Darrah Defendants' premises, and was using the droplight to illuminate the area of his work.

73. On November 26, 2004, Plaintiff's co-worker cleared a vehicle's fuel line with a compressed air hose causing the contents of the vehicle's fuel line to spray on the droplight and break the droplight's bulb, igniting gasoline around Plaintiff.

(*Id.* ¶¶ 46-47, 64, 70-73, ECF pp. 7, 9,). As a result, Plaintiff suffered severe injuries, including burns, scarring and disfigurement. (*Id.* ¶¶ 79-80, ECF p. 10).[5] Stine alleges that the Darrah Defendants were negligent in their maintenance and control of the premises and in giving him the droplight to work with.[6]

IV.     *Discussion*

    A.  *The Duty to Defend*

In Pennsylvania, "an insurer's duty to defend and indemnify" its insured is "determined solely from the language of the complaint against the insured." *Kvaerner Metals Div. v. Commercial Union Ins. Co.*, 589 Pa. 317, 331, 908 A.2d 888, 896 (2006). *See also Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595-96 (3d Cir. 2009) (quoting *Kvaerner*). "[T]he duty to defend is separate and broader than the duty to indemnify . . . ." *Kvaerner*, 589 Pa. at 330 n.7, 908 A.2d at 896 n.7.[7] Thus, if there is no duty to defend, there is no duty to indemnify. *Id.* "'In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.'" *Nationwide Mut. Ins. Co.*, *supra*, 562 F.3d at 595-96 (quoted case omitted).

---

    [5] The material differences from Stine's first amended complaint is the addition of paragraph 47 which alleges that the repair/body shop is used for the dismantling and recycling operation and the interpolation of the phrase "in use in auto dismantling and recycling operations" in paragraphs 64 and 70-73, which correspond to paragraphs 60, and 65 through 68 of the first amended complaint.

    [6] Stine also names as defendants the manufacturer and suppliers of the droplight.

    [7] "[T]he duty to defend arises whenever the complaint filed by the injured party may fall within the scope of the policy's coverage, [but] the duty to indemnify is more limited because it arises only if it is established that the insured's damages are actually covered by the terms of the policy." *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006) (nonprecedential).

To determine whether an insurer has a duty to defend, we engage in a two-step process. First, we look at the language of the policy "to determine in which instances [it] will provide coverage." *Kvaerner*, 589 Pa. at 331, 908 A.2d at 896-97. Any ambiguity in the policy language is resolved against the insurer and in favor of the insured. *Id.* at 331, 908 A.2d at 897. Second, we examine the complaint in the underlying action "to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.* at 331, 908 A.2d at 896-97.

> B. *The Claim Falls Outside the Scope of Coverage Because Stine Alleges He Was Injured While Repairing a Vehicle in the Repair/Body Shop and Coverage Is Limited to Auto Dismantling and Recycling Operations*

Western Heritage raises several grounds in seeking a declaratory judgment in its favor on its duty to defend or indemnify. As one basis for relief, Western Heritage contends that Stine's claim still falls outside the scope of coverage because coverage applies only to the auto dismantling and recycling operation, and Stine's allegations in his second amended complaint are essentially the same as in his first amended complaint, that he was injured while repairing a car in the repair/body shop, not while he was engaged in auto dismantling and recycling.[8]

In moving to dismiss Plaintiff's action, defendants, Stine; the Estate; attorney Albert, the Estate's administrator; and Harry J. Darrah, Jr. t/a Darrah's Automotive and Recycling, argue that the averments of the second amended complaint are materially different from the averments of the first amended complaint. Unlike the averments of the first amended complaint, they place Stine's repair work in the larger context of the dismantling and recycling operation, showing that "the

---

[8] Plaintiff's other grounds are: (1) collateral estoppel based on our previous ruling there was no coverage; (2) Stine should not be permitted to use "artful pleading" to avoid our previous ruling; (3) Harry J. Darrah, Jr., does not qualify as an insured under the policy; and (4) coverage is precluded by the employer's liability exclusion.

7

repair/body shop business was an integral part of the Darrah Defendants auto dismantling and recycling operation." (Doc. 8, Opp'n Br. at p. 2). Thus, as alleged in paragraph 47 of the second amended complaint, the repair/body shop "was used in auto dismantling and recycling operations in that autos were dismantled in the repair/body shop and parts removed from autos in the repair/body shop were recycled, and recycled parts were used in the repair/body shop."

They also assert that Stine's second amended complaint "states explicitly that his injury occurred while working in Darrah's auto dismantling and recycling operation, though he happened to be working in the repair/body shop segment of that operation at the time." (Doc. 8, Opp'n Br. at p. 10). They add that since the policy covers an "operation" rather than "premises," the physical location of the injury is irrelevant as long as he alleges the "injury occurred while working in the designated operation." (*Id.*, p. 18).

After review of the pertinent allegations, we must agree with Plaintiff that the second amended complaint still does not allege bodily injury that comes within the policy's coverage for an auto dismantling and recycling operation. We disagree with Defendants' assertion that the second amended complaint alleges that Stine was injured while working in the dismantling and recycling operation. Paragraph 47 does allege that the repair/body shop "was used in auto dismantling and recycling operations," but that does not mean that every activity that took place in the repair/body shop was part of that operation. As Plaintiff points out, Stine still alleges that he was repairing a car when he was injured. Hence we infer that the repair/body shop was not being used at that time as part of the dismantling and recycling operation. If the latter operation were happening at the time of Stine's injury, he should certainly have been able to make the necessary allegations, even if he himself

was just repairing a vehicle. In fact, if we were to accept Defendants' approach to the coverage issue, coverage would be for the premises where the dismantling and recycling operation took place, but coverage is not for premises or any particular location, as Plaintiff points out, but for a work operation, the dismantling and recycling of automobiles.[9]

In their reply brief, moving defendants argue for the first time that the allegations support the inference that Stine was engaged in the covered operation because auto repair can be a form of auto recycling. They reason that "'auto recycling' requires that used parts removed from certain vehicles be used in the repair of other vehicles." Hence, "[i]f no 'repair' was required, there would be no 'recycling.'" (Doc. 12, Reply Br. at p. 3). The difficulty with this position is that not every repair involves a recycled part, and Stine does not allege that his repairs involved a recycled part. It is not enough for Defendants to argue in briefs that Stine "could [have been] repairing a vehicle at the same time he was recycling auto parts." (*Id.* at p. 4).

We will therefore deny the motion to dismiss the declaratory judgment action as Plaintiff has presented a valid claim that it has no duty to defend or indemnify the defendants.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: May 23, 2012

---

[9] Neither party has argued that the policy defines a "dismantling and recycling operation" or "operation." "Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense," *Kvaerner Metals Div.*, *supra*, 589 Pa. at 332-33, 908 A.2d at 897. "Operation" is defined as "a doing or performing esp. of action: work, deed" or as "the doing or performing of a practical work." Webster's Third New International Dictionary 1581 (1993).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY,<br>      Plaintiff<br><br>      v.<br><br>HARRY J. DARRAH, JR., t/a DARRAH'S AUTOMOTIVE AND RECYCLING; ESTATE OF HARRY J. DARRAH., JR., Deceased; NEIL ALBERT, ESQ., as Administrator of the Estate of Harry J. Darrah, Jr., Deceased; and JOSEPH STINE,<br>      Defendants | : <br> : <br> : <br> : <br> : <br> : CIVIL NO. 1:11-CV-1539 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

*O R D E R*

AND NOW, this 23rd day of May, 2012, it is ORDERED that the following motions are DENIED:

    1.  The motion to dismiss (Doc. 5) filed by the Estate of Harry J. Darrah, Jr.; Neil Albert, Esq., the administrator of the Estate of Harry J. Darrah, Jr.; and Harry J. Darrah, Jr. t/a Darrah's Automotive and Recycling.

    2.  The motion to dismiss (Doc. 7) of defendant Joseph Stine.

                                  /s/ William W. Caldwell
                                  William W. Caldwell
                                  United States District Judge